[No. 15170–3–I.   Division One.   August 11, 1986.]

RUSSELL M. EGGERT, *Appellant,* v. VIRGIL VINCENT, ET AL, *Respondents.*

*Kevin Keefe,* for appellant.

*Quinton Christensen* and *Christensen & Hawes,* for respondents.

SWANSON, J.—Russell M. Eggert, plaintiff below in an action for conversion, appeals a judgment of dismissal in favor of Virgil Vincent and Gene Ward, defendants below. Eggert contends the trial court erred in concluding that he failed to prove any damage resulting from the defendants' wrongful seizure of his property. We affirm.

The unchallenged findings of fact and testimony at trial establish the following factual summary.

In September 1981 Russell Eggert, with no down payment, purchased a Pioneer Roll rock crusher mounted on a trailer and a Caterpillar 500KW generator set mounted on a Fruehauf Tandem Axle Single Drop Lowboy trailer from Lynnwood Equipment Company. In connection with the transaction, Eggert signed a promissory note that was secured by a mortgage on the equipment. The seller subsequently assigned its rights to Credit Alliance Corporation.

Eggert testified that he purchased the equipment to lease to one Leo Casey, who operated a quarry near Granite Falls. Eggert subsequently entered into an oral lease with Casey, and the equipment was delivered to the quarry site. The terms of the lease provided for a payment of $10,000 per month, which Eggert intended to use to cover his own loan payments. Neither Eggert nor Casey ever made a payment to Credit Alliance Corporation on the promissory note. Nor did Casey ever make a payment to Eggert on the oral lease.[1]

Defendants Vincent and Ward apparently knew Casey and, believing him to be the owner of the equipment, cosigned a promissory note for Casey. Towards the end of April 1982, according to Eggert's trial testimony, Casey had a 5–month contract for work in Nevada "guaranteed," and

---

[1]Neither Casey nor Credit Alliance Corporation was a party to the proceedings below.

to this end, Casey began removing equipment from the quarry. Eggert believed Casey would obtain a draw on the Nevada contract and that money would then be used to catch up on the delinquent payment for the equipment.

Vincent and Ward visited the quarry around this time and observed that the equipment was being dismantled and removed. Believing the rock crusher and generator to belong to Casey and apparently suspecting that the equipment securing the promissory note they had cosigned was in danger of disappearing, Vincent and Ward had the equipment seized and removed to the Caulkins Equipment Company in Everett on April 29, 1982.

Shortly thereafter Credit Alliance Corporation called Ward, informed him of the true ownership of the equipment, and took possession of it. Eggert was delinquent on the promissory note to Credit Alliance prior to the seizure of the equipment. The equipment was later sold at a foreclosure sale for approximately $35,000. The trial court found that the fair market value of the equipment was $170,000 on April 29, 1982.[2]

Although the appellate record does not contain the pleadings, Eggert apparently filed suit against Vincent and Ward for conversion. Following a bench trial on May 24, 1984, the trial court concluded that Eggert was the owner of the rock crusher and generator that had been leased to Casey, that Vincent and Ward had wrongfully seized Eggert's property, but that Eggert had failed to prove any loss or damage resulting from the seizure. The trial court concluded that Eggert was not entitled to the fair market value of the property because he was not in possession of the goods when they were seized and because he failed to prove the amount of any damages that may have occurred while the property was in the possession of the defendants. A judgment of dismissal, awarding costs to the defendants,

---

[2]The record also contains a summary judgment entered November 17, 1983, for the amount of $220,000 in favor of Credit Alliance Corporation against Russell Eggert.

was entered on July 13, 1984. This appeal ensued.

▮ Eggert has not assigned error to the findings of fact entered by the trial court. They therefore become verities on appeal, and our review is limited to a determination of whether the findings support the trial court's conclusions of law and judgment. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.,* 36 Wn. App. 762, 766, 677 P.2d 773 (1984).

We observe at the outset that Eggert has failed to assign error to the judgment of dismissal in either his notice of appeal or in his appellate brief. The notice of appeal seeks review only of "Conclusion of Law (3)", a determination that was in Eggert's favor.[3] The appellate brief assigns error to the trial court's failure to award fair market value for Eggert's equipment. Failure properly to assign error to the judgment of dismissal may preclude consideration on appeal. *Cf. State v. Fortun,* 94 Wn.2d 754, 757, 626 P.2d 504 (1980).

Although not clearly set forth, Eggert attempts to challenge conclusion of law 4, which stated:

[T]he plaintiff failed to prove any loss or damage suffered as a result of defendants' wrongful seizure of the property.

A conversion is "a willful interference with a chattel without lawful justification, whereby a person entitled thereto *is deprived of the possession of it.*" (Italics ours.) *Olin v. Goehler,* 39 Wn. App. 688, 693, 694 P.2d 1129 (1985); *see also Judkins v. Sadler–Mac Neil,* 61 Wn.2d 1, 3, 376 P.2d 837 (1962). Once a conversion is established, the general measure of damages, absent willful misconduct, is the fair market value of the property at the time and place of the conversion. *Merchant v. Peterson,* 38 Wn. App. 855, 858, 690 P.2d 1192 (1984).

▮ However, in an action for conversion, the burden is on the plaintiff to establish a right to maintain the action: ownership of and a right to possession of the property

---

[3]Conclusion of law 3 states: "That the defendants have no property interest in or claim against said equipment, or claim against plaintiff."

allegedly converted. *Junkin v. Anderson,* 21 Wn.2d 256, 258, 150 P.2d 678 (1944). Conversion had its genesis in the common law action of trover. *See generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 15 (5th ed. 1984). An owner who had neither possession nor an immediate right to possession could not maintain an action for trover. Strict adherence to this rule was based upon the distinguishing feature of the cause of action itself: a defendant who appropriated another's goods was required, in effect, to purchase them from the plaintiff at a forced judicial sale. *Prosser and Keeton on Torts,* at 90.

Although some of the requirements of trover have been relaxed, the rule in this state is that in order to maintain an action for conversion, the plaintiff must either have been in possession or have an immediate right to possession at the time the goods were converted. *Cf. Pacific Gamble Robinson Co. v. Chef–Reddy Foods Corp.,* 42 Wn. App. 195, 202, 710 P.2d 804 (1985); *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.,* 28 Wn. App. 669, 679, 626 P.2d 30 (1981); 18 Am. Jur. 2d *Conversion* § 54, at 191 (1965) (an interest in property that does not carry with it the right to possession is insufficient to maintain conversion); *see Smith v. Dahlquist,* 176 Wash. 84, 28 P.2d 262 (1934); *see also Burnett v. Edward J. Dunnigan, Inc.,* 165 Wash. 164, 4 P.2d 829 (1931); *Ross v. Fisher Co.,* 148 Wash. 274, 268 P. 883 (1928); *United States v. Loughrey,* 172 U.S. 206, 219, 43 L. Ed. 420, 19 S. Ct. 153 (1898). A corollary to this rule is that a bailor may not maintain an action for conversion against a third party unless the bailor has retained the right to demand possession of the goods. 8 Am. Jur. 2d *Bailments* § 284, at 1171 (1963); *cf. Merchants Leasing Co. v. Clark,* 14 Wn. App. 317, 322, 540 P.2d 922 (1975) (lessee, from whom lessor had rightfully repossessed leased equipment pursuant to lease, had right to regain possession and therefore could recover for conversion from lessor).

In the instant case, it is undisputed that Eggert, the owner, had leased the equipment to Casey, who was in possession pursuant to an oral lease at the time of seizure. The

only lease term testified to was the monthly rental amount, $10,000. Eggert does not contend that he was entitled to possession of the equipment at the time of the seizure; nor were any findings entered to this effect. The absence of a finding on a material issue is presumptively a negative finding entered against the party with the burden of proof. *Pilling v. Eastern & Pac. Enters. Trust,* 41 Wn. App. 158, 165, 702 P.2d 1232 (1985). The plaintiff in an action for conversion must rely on the strength of his own title and right to possession without regard to the weakness of that of the opposing party. *Malchow v. Boise Cascade Corp.,* 20 Wn. App. 258, 259, 578 P.2d 1337 (1978). Eggert failed to sustain his burden of proving an immediate right to possession of the equipment.

It is true, as Eggert contends, that one need not have an absolute and unqualified title in order to maintain an action for conversion. *See, e.g., Malchow v. Boise Cascade Corp., supra.*

> A person who is entitled to bring an action for a conversion, although he has a limited interest in the property converted, may, as against a stranger, recover the full value of the property.

*Crutcher v. Scott Pub'g Co.,* 42 Wn.2d 89, 102, 253 P.2d 925 (1953). We have been cited no authority, however, that would support Eggert's assertion that an owner who has neither possession nor any right to possession is a person "entitled to bring an action for a conversion" and recover the full value of the property. *Cf. Robert R. Gibbs, Inc. v. State,* 70 A.D.2d 750, 417 N.Y.S.2d 24 (1979) (equipment lessor who established ownership and right to possession entitled to maintain conversion action against tax agents who seized lessor's goods from premises of lessee).

Moreover, even assuming, as dicta in some decisions suggest, that one may maintain a conversion action by showing either a right to possession *or* "some property interest in the item converted[,]" *Malchow v. Boise Cascade Corp., supra,* the trial court's decision was still correct. One commentator has criticized the possession requirement as "an

antique procedural survival, with nothing to recommend it." *Prosser and Keeton on Torts,* at 104. The commentator goes on to observe:

The important fact is that the person entitled only to future possession can recover, in whatever form of action, *the full value of his interest in the goods which has been appropriated by the defendant, and no more.* If this is not to be called conversion, it is at least the same thing by another name.

(Footnote omitted. Italics ours.) *Prosser and Keeton on Torts,* at 104–05.

It was undisputed that Eggert never made a payment on the equipment seized and that he was in default on his obligation to Credit Alliance Corporation. As the trial judge correctly observed in his oral opinion, Eggert, by his own testimony, had no right to use the equipment at the time it was seized. Moreover, there is no suggestion that Credit Alliance Corporation's repossession of the property following the defendants' temporary detainment was in any way wrongful. Thus, the only damage that Eggert suffered during the period defendants were in possession was the potential loss of rental income from Casey. Eggert failed completely to establish what the value of his limited interest in the property might have been.

In summary, Eggert's reliance on the remedy for the tort of conversion is excessively literal and, under the circumstances of the instant case, misplaced. He may have several possible avenues of relief, but recovery in conversion for the full market value is not one of them.

The judgment is affirmed.

RINGOLD, A.C.J., and GROSSE, J., concur.

Reconsideration denied October 21, 1986.

Review denied by Supreme Court March 4, 1987.